[No. 18988. Department Two. May 7, 1925.]

THE STATE OF WASHINGTON, *Respondent,* v. OSCAR
ANDERSON *et al., Appellants.*[1]

APPEAL (145)—PRESERVATION OF GROUNDS—EXCEPTIONS TO FIND-
INGS—NECESSITY. Although an inadvertent finding of the water
commissioner as to the date of the appropriation was not excepted
to, because he found appellants' appropriation prior in time, upon
reversal of the order of priority, the appellant is entitled to a review
of the finding as to the time of the appropriation.

WATERS AND WATER COURSES (6) — APPROPRIATION — DILIGENCE.
Want of diligence in completing diversion works cannot be urged
to defeat a prior appropriation, where only two parties were inter-
ested, and the prior appropriation was the more diligent of the two.

Appeal from a judgment of the superior court for
Chelan county, Grimshaw, J., entered May 3, 1924,
reversing the findings of the state supervisor of
hydraulics as to the priority of rights to the use of
the waters of a stream for irrigation. Reversed.

*D. A. Shiner* (*R. S. Ludington,* of counsel), for ap-
pellants.

*Chas. R. Sargent,* for respondent.

HOLCOMB, J.—This is a case under the water code to
reverse and modify the decree of the lower court re-
viewing and modifying the findings of the state super-
visor of hydraulics, as affects the waters of Grade
creek, in Chelan county. The proceedings were regu-
larly instituted and referred to the state supervisor of
hydraulics as referee, as prescribed by the water code,
who heard the evidence produced by the parties and
made a personal survey of the land and the water
supply in question, and found and concluded that ap-
pellant had first and prior right to 1.07 cubic feet per

[1]Reported in 235 Pac. 809.

second of water from two branches of Grade creek, for 53.7 acres of his homestead consisting of 159.65 acres. The trial court, upon it appearing that the state supervisor of hydraulics, as referee, had made a finding that the water right of appellant was initiated in November, 1909, and that the water right of respondent was initiated in September, 1908, by respondent's predecessor, reversed the supervisor and gave respondent first and prior right to the waters of Grade creek to the amount of 20 cubic feet per second, and appellants second right to the extent of 1.07 cubic feet per second for 53.7 acres. Appellant claimed sufficient water to irrigate at least 70 acres, prior to respondent's right.

Appellant had posted and filed several notices of appropriation, claiming various quantities of water from the waters of Grade creek, and for various purposes, but claimed more specifically the quantity of water for his homestead under an appropriation dated and posted February 24, 1908, and filed within the time required by law, under which he proceeded to develop his land for the use of water and to construct an irrigation system, which he completed in the fall of 1912. His notice and his first intention was to apply the water to some other land to the west of the homestead which he finally received patent for, and which included fractional lot 4, section 18, and other lands embraced in his homestead filing. It was necessary for him to obtain a release of the lands he intended to take as a homestead from the Chelan National Forest, which he did. Finding that a tract of substantially the same area, of better soil and more adaptable for cultivation, could be had on the eastern edge of his homestead, he relinquished his intention to include fractional lot 4 as part of his homestead, and finally applied for and proved up on the following land as his homestead:

Lots 1, 2, and 3, section 17, southeast quarter of northeast quarter, and lot 5, of section 18, township 24 north, range 21 east, W. M. This land is to the east of Grade creek. It is the only homestead appellant ever obtained.

He first applied for his homestead in January, 1908, and having made some improvements on it, including a habitable house, he occupied it in the summer of 1909. The irrigation system required to convey the waters from Grade creek to his land was quite extensive and expensive. The draw of Grade creek was high and precipitous, with many perpendicular cliffs in it, so that he had to place the intake a half mile from the mouth of the creek by direct line, construct an intake and a short piece of flume, and put in a pipe line about two thousand feet in length. He then siphoned around a cliff, starting with one-foot pipe and gradually diminishing it to six inches, and at the end of the siphon built a flume which conducted the water to his land. He was compelled to and did build about seven thousand feet of flume. The first season he was on his homestead he cultivated and set out fourteen acres of orchard. The next year he planted six acres of alfalfa, and also another five acres of alfalfa in 1911, in addition to which he planted other crops, such as corn, berries, and garden truck.

In the fall of 1912, respondent district completed its flume to take the waters of Grade creek and apply on lands within the boundaries of the district. When it was put in operation in the spring of 1913, it diverted all of the water of Grade creek, which diversion was subsequent to the appropriation to a beneficial use of appellant, as before shown. During that year appellant lost his orchard, and was only able to save about five acres of alfalfa. Respondent district tapped the creek about one-half mile above the intake of appel-

lant. After the diversion by respondent, appellant continually made efforts to preserve his water right, and employed an attorney for about two years in attempting to secure some adjustment.

The finding of the supervisor, made by his assistant, who held the hearing, that the water right of appellant was initiated in November, 1909, was undoubtedly incorrect and inadvertent. There was no notice of any appropriation of any water right in Grade creek by appellant in November, 1909. While he had made a number of paper appropriations and had done some work under some of them, and had received assignments of water rights from another, one of which was initiated in March, 1908, and another initiated on October 24, 1908, the only appropriation of anything made by appellant in November, 1909, was a preemption of a water right for a ditch and location of water in what was called "Dry Gulch," on November 16, 1909.

Respondent bases its right to appropriate the waters of Grade creek upon a notice of appropriation by one Harris, dated September 9, 1908. The interest of Harris in the appropriation was speculative, as described by witnesses who had worked for him, and he and his associate who were attempting to promote the project were not financially able to construct the system. Harris sold his rights to the Wapato Irrigation Company on September 29, 1908. That company sold its rights to the Lake Chelan Land Company November 26, 1909; that company sold its rights to the Lake Chelan Water Company June 9, 1911, and the last company transferred its rights to respondent May 4, 1920.

After the controversy had arisen between appellant and respondent district and its predecessors, the Lake Chelan Land Company and the Lake Chelan Water Company, appellant's attorney procured a contract

which was acknowledged before the present attorney for respondent as notary public, by the president and secretary of respondent district, on August 16, 1920, and by appellant on August 25, 1920, in which it was recited that both parties claimed the right to use for the irrigation of their properties the waters of Grade creek, and that both parties desired the controversy to be definitely adjusted and settled, and therein agreed that all the rights of both parties in the waters of Grade creek remain in *status quo,* neither party to claim or derive any benefit or suffer any loss by reason of the failure to assert such rights as against the other by legal process or otherwise, or by the running of the statute of limitations, until the matter in controversy could be adjudicated by the state hydraulic engineer as provided by law. Respondent, as second party to the contract, agreed to have such proceeding to adjudicate initiated without delay, and in the meantime appellant, as party of the first part, was permitted to use the water flowing in Grade creek that he could put to a beneficial use on his land.

No action having been taken under that contract as agreed, on November 30, 1921, another contract was entered into by appellant as party of the first part, and respondent as party of the second part, wherein it was first recited that appellant was the owner of 160 acres of land, more or less, on the shore of Lake Chelan, just east of Grade creek, and that he claimed to be entitled to the use of water and water rights from Grade creek prior to any rights of respondent to such water, to the extent sufficient to irrigate all the reasonably irrigable land on his premises to such capacity as would make the same productive as irrigated land. It was then recited that ''second party admits and concedes such right, but the parties hereto are unable to definitely agree upon the extent of such irrigable

acreage and the amount of water per acre reasonably necessary to irrigate the same as aforesaid, but each .desires an early determination of that matter.'' It was then recited that to await the determination of the disputed points by an adjudication in court under the irrigation code would take so long as to work undesirable hardship on appellant, and it was therefore agreed that the state hydraulic engineer should, as soon as possible and when in his judgment the climatic conditions would permit, make an investigation of the premises and ranch and determine and decide the points of the amount of land on appellant's ranch reasonably irrigable as aforesaid, and the amount of water per acre necessary to properly irrigate the same, and make his decision in writing, and the same should be binding upon each party to the contract, and the amount so found should be the amount of water appellant should be entitled to use on his ranch for the irrigation thereof, which right should be prior and superior to any right of the second party in and to the use of the waters of Grade creek. It was then further agreed that appellant should have no other claim to the waters of Grade creek adverse to respondent, except as awarded by the findings and decision of the state hydraulic engineer. Appellant agreed to reimburse the state hydraulic engineer for any expenses incurred by him in the investigation. This contract was also acknowledged before the present attorney for respondent as notary public, by the president and secretary of respondent, who on oath stated that they were authorized to execute the instrument as such officers for and on behalf of the corporation, and by appellant on the same date as the execution of the contract.

On objection by respondent, both at the hearing before the referee and before the trial court, all that part

of the contract of November 30, 1921, which admitted and conceded that the claim and right of appellant to the water of Grade creek was prior to any right of respondent to an extent sufficient to irrigate all the reasonably irrigable land on his ranch, the trial court held with respondent that that portion of that contract was *ultra vires*.

Upon the superior court modifying the adjudication made by the supervisor of hydraulics and entering a decree to that effect, appellant moved to withdraw that portion of the decree made in the proceeding, for the purpose of correcting the finding made by the referee as to the initiation of appellant's rights and introduce further evidence under the provisions of the water code. This application was denied.

Appellant assigns as errors the findings of both the trial court and the referee as to the date of the initiation of appellant's water right as of November, 1909; the holding by the trial court that the contract of November 30, 1921, was *ultra vires* as to the portion specified; and the refusal of the lower court to withdraw the portion of the decree complained of, permit additional evidence, and correct the decree.

As to the first assignment, there is no doubt that the assistant supervisor, who held the hearing, inadvertently erred as to the date of the initiation of appellant's water right in Grade creek. A careful examination of the record shows that there is nowhere any instrument, testimony or evidence, of any initiation by appellant of a water right in Grade creek as late as November, 1909. Respondent contends, however, that appellant cannot rely upon this claim of error for the reason that he took no exception to the finding of the referee on that matter, but excepted only to the finding of the referee as to the acreage which appellant could irrigate successfully under any water right he

had. No objection or exception was taken as to the time of initiating his right, nor as to the time of initiating the right of respondent. Respondent then states and relies upon the general rule that where there is a trial by the court without a jury the findings of fact are conclusive and not subject to review as erroneous or defective, in the absence of proper exceptions thereto, which has been followed by this court from *Rice v. Stevens,* 9 Wash. 298, 37 Pac. 440, to *Beauregard v. Automobile Insurance Company of Hartford,* 130 Wash. 163, 226 Pac. 493.

There is no doubt of that general rule and of our constant practice, but there was no need for appellant to except to the finding as to the date of the initiation, for the referee found and concluded that the appropriation and diversion of appellant was prior and superior to that of respondent, and that he was entitled to the application thereof to 53.7 acres of his land and entitled to 1.07 cubic feet of water per second.

The attorney for appellant at the time (who was not the same as the attorney on appeal), relying upon the contracts entered into between the parties and introducing them in evidence, and upon the showing which was uncontradicted by any other evidence, that appellant initiated his water right by paper notice in February, 1908, and that his paper notice was prior to that of respondent's predecessor, and that he had diverted and put to a beneficial use as diligently as possible considering the magnitude and expense of the irrigation works required to divert the waters from Grade creek, of course would accede to the finding that the water right of appellant was prior and superior to that of respondent as to the water supply in Grade creek. It was not necessary to object and except to that part of the findings and conclusions of the referee. Appellant was contending as well for a larger acreage of

land, and for a greater allowance of water. The fact that the referee erred as to the date of the initiation of appellant's water right was of no moment, since the referee found that it was prior and superior to that of respondent to the extent found by the referee. Hence, we think appellant entitled to raise the question on appeal.

Respondent also contends that, in any event, appellant was not diligent in completing his diversion works, since he did not have them completed until 1912, after having initiated his water right in 1908. If that be true, neither was respondent diligent. The record shows, without contradiction, that both parties did work in 1906, and respondent's predecessors and appellant continued to work upon their irrigation systems from that time, as conditions and means justified, until 1912. Respondent's three immediate predecessors were private stock companies with some capital. Appellant is a farmer dependent upon his individual efforts. Appellant completed his very extensive works that year, and respondent did not complete its diversion works as to that part of its system until later, and never diverted any water from Grade creek until 1913. Appellant is shown, therefore, to have been more diligent than respondent, and as they are the only two parties before us on this appeal, and the only two whose rights are to be considered, the rights of appellant are superior to those of respondent. Respondent has several other sources of water supply and several storage reservoirs belonging to it. Appellant has but the one source of supply and no water storage facilities.

While a difficult and interesting question is presented by the question as to whether that portion of the contract of November 30, 1921, held by the court to be *ultra vires* under § 7430, Rem. Comp. Stat. [P. C.

§ 3209], which is in no wise adequately briefed or presented by either party, we do not find it necessary to determine the same.  On the record itself the rights of appellant are shown to be superior to those of respondent, and the finding and conclusion of the referee to that effect should be affirmed.

The judgment is therefore reversed, with instructions to enter a decree carrying into effect the findings and conclusions of the supervisor as referee as to the rank of the rights of these parties and the acreage and extent of the beneficial use thereof by appellant, and the duty of the water upon the lands of both appellant and respondent as found by the supervisor..

TOLMAN, C. J., FULLERTON, MITCHELL, and MACKINTOSH, JJ., concur.